**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number 1:21-cr-00512-PLF** |
| **MATTHEW THOMAS PURSE,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE IN OPPOSITION TO**
**DEFENDANT PURSE'S MOTION TO DISMISS THE INDICTMENT**

The United States of America respectfully submits that this Court should deny defendant

Matthew Thomas Purse's Motion To Dismiss The Indictment, ECF 34. The motion disregards and

is contrary to the majority of relevant authorities in this district, including rulings from this Court.

In the guise of other claims, it effectively seeks a pretrial determination of the sufficiency of the

government's evidence, which is not the proper function of a motion to dismiss.  In doing so, the

defendant erroneously contends that this Court should resolve the motion by looking beyond the

four corners of the indictment and its charging language, and compounds that error by directing

the Court to an incomplete portion of the record which does not even fully address issues the

defendant has raised.  Accordingly, and as explained more fully below, the motion should be

denied.

**BACKGROUND**

The charges in this case followed from events this Court has described in *United States v.*

*Puma*, No. 21-cr-454-PLF, 2022 WL 823079 at *1-2 (D.D.C. Mar. 19, 2022):

> On January 6, 2021, a joint session of Congress convened to certify the results of
> the 2020 presidential election. … This certification process is mandated by the
> Twelfth Amendment to the U.S. Constitution and by the Electoral Count Act. See
> U.S. CONST. amend. XII; 3 U.S.C. § 15. Then-Vice President Mike Pence was

present and presided over the certification. … The U.S. Capitol Police "set up security barriers on the Capitol grounds" and posted signs indicating that the area was closed.

Shortly before noon, at a rally at the White House, then-President Donald Trump "reiterated his claims that the election was 'rigged' and 'stolen,' and urged then-Vice President Pence ... to 'do the right thing' by rejecting the various States' electoral votes and refusing to certify the election in favor of [Joseph] Biden."

*Puma*, 2022 WL at *1-2 (internal citations omitted). This Court quoted further description from

*Trump v. Thompson*, 20 F.4th 10, 17-18 (D.C. Cir. 2021):

Shortly after the speech, a large crowd of President Trump's supporters – including some armed with weapons and wearing full tactical gear – marched to the Capitol and violently broke into the building to try and prevent Congress's certification of the election results. The mob quickly overwhelmed law enforcement and scaled walls, smashed through barricades, and shattered windows to gain access to the interior of the Capitol. Police officers were attacked with chemical agents, beaten with flag poles and frozen water bottles, and crushed between doors and throngs of rioters. As rioters poured into the building, members of the House and Senate, as well as Vice President Pence, were hurriedly evacuated from the House and Senate chambers. Soon after, rioters breached the Senate chamber. In the House chamber, Capitol Police officers barricaded the door with furniture and drew their weapons to hold off rioters.... Capitol Police were not able to regain control of the building and establish a security perimeter for hours. The Joint Session reconvened late that night. It was not until 3:42 a.m. on January 7th that Congress officially certified Joseph Biden as the winner of the 2020 presidential election.

*Id*.

This defendant was part of the crowd that, among other actions, breached barriers and trespassed inside of the Capitol building. As a result, on June 28, 2021, he was initially charged in a criminal complaint for: 1) entering and remaining in any restricted building or grounds without lawful authority to do so, in violation of 18 U.S.C. § 1752(a)(1); 2) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); 3) disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and 4) parading, demonstrating or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF 2. The complaint did not charge any violation under 18 U.S.C. § 1512.

Federal agents arrested the defendant on July 9, 2021.  ECF 6.  On August 6, 2021, a grand jury returned a five-count indictment charging in Count One that the defendant attempted to and did obstruct, influence and impede an official proceeding in violation of 18 U.S.C. §§ 1512(c)(2); in Count Two that the defendant entered and remained in a restricted building and grounds, in violation of 18 U.S.C. § 1751(a)(1); in Count Three that the defendant engaged in disorderly and disruptive conduct in and within such proximity to a restricted building and grounds, in violation of 18 U.S.C. § 1752(a)(2); in Count Four that the defendant engaged in disorderly and disruptive conduct within the United States Capitol Grounds and any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(D), and in Count Five that the defendant paraded, demonstrated, and picketed in any Capitol Building.  ECF 9.

The defendant now seeks dismissal of each count in his indictment.  He does so by asking this Court to rely on facts and allegations outside of the indictment itself.  As explained below, this is not the proper way to address a motion to dismiss.

With respect to Count One, the defendant argues that Section 1512(c)(2) is limited only to evidence tampering with respect to documents or records, and has no application to other forms of obstruction. He further contends that Certification of the Electoral College vote does not meet the requirement of an "official proceeding." The defendant incorrectly assumes that the government's proof is limited only to the defendant's conduct while inside of the Capitol and argues, conveniently, but also incorrectly, that such limited conduct cannot constitute obstruction.  His final challenge is that the term "corruptly" in Section 1512(c)(2) is vague and that the indictment does not allege sufficient evidence of the defendant's intent.  This Court—and every other judge on this Court to have considered this question—has rejected that claim.

The defendant attacks Counts Two and Three by claiming that the charged offenses under

Section 1752 are vague and that the indictment does not allege sufficient evidence of the defendant's intent because, according to the defendant, the prosecution cannot prove he knew the Secret Service had a role in designating the restricted area he breached.  The defendant seeks enforcement of requirements that do not actually exist and that otherwise depend on a premature pretrial assessment of the government's evidence; thus, his challenge to counts charging Section 1752 must fail.

The defendant's objection to Counts Four and Five, which charge violations of 40 U.S.C. § 5104(e)(2)(D) and (G) amount to nothing more than claims that the United States lacks sufficient evidence to prove those violations.  The quality of the government's proof, however, is not a proper basis for pretrial dismissal, as explained below, and the challenge to Counts Four and Five should be summarily rejected.

## LEGAL ANALYSIS

### I. The Defendant Cannot Seek Dismissal Based On Information Outside Of The Indictment

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'"  *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).  And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed."  *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005)(emphasis added)—neither of which has occurred here.[1]  Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

Throughout his motion, the defendant attempts to equate the statement of facts supporting the criminal complaint, ECF 2-1, as the measure against which the indictment must be judged. That is incorrect. Unlike an indictment, a complaint is not the final charging document. After the filing of a complaint, the prosecution may continue to investigate and refine or alter its charging decisions. Thus, a complaint is not equivalent to a "full" proffer of the government's evidence, especially where, as here, the lead charge in the indictment alleges an offense not included in the complaint. *See United States v. Safavian*, 429 F.Supp. 2d 156, 158-59 (D.D.C. 2006) (court could not properly consider discovery material to evaluate a motion to dismiss the indictment, and would not assume such material represented the totality of the government's evidence or what it would present at trial).

The defense offers no legal support for the claim that a court may look to a complaint to

---

[1] "It is usually improper to force the Government to proffer its evidence pretrial so that the defense might test its sufficiency.  That could, for instance, curtail the Government's ability to obtain additional evidence or locate new witnesses."  *United States v. Hitelsberger*, 991 F.Supp.2d 108, 125 (D.D.C. 2014) (cleaned up).

assess the validity of an indictment, or for the proposition that any component of a criminal complaint equals a full proffer from the government.  In fact, cases cited by the defendant, such as *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015), *see* ECF 34:11, undermine that contention.  In *Ballestas*, the court of appeals found that "the district court did not err when it assumed the truth of the government's proffered facts in denying Ballestas' motion [to dismiss the indictment;]" however, the source of the proffered facts was the government's response to the motion to dismiss.  *See* 795 F.3d at 142 ("In response to Ballestas' motion, the government proffered facts supporting the conspiracy charge").  The other case the defense cites, *United States v. Naik*, No. 19-cr-373-TSC, 2020 WL 534539 (D.D.C. Feb. 2, 2020), offers even less support for using a criminal complaint to assess an indictment, since Naik was charged only by indictment and no complaint was filed. *See id*. (ECF 1).  The "government's proffered facts" relied on in *Naik*, 2020 WL 534539 at *2, also came from the government's response to the motion to dismiss[2], and not from a stage of the case unrelated to the motion to dismiss.  This Court should therefore reject the attempt to treat the complaint as a sufficient source of information for addressing the motion to dismiss.

Moreover, criminal cases have no mechanism equivalent to the civil rule for summary judgment.  *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence).  Accordingly,

---

[2] *See Naik*, 2020 WL 534539 at *1 (citing to "ECF No. 38 ("Gov't Br.").

dismissal of a charge does not depend on forecasts of what the government can prove.  Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense.  *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, this Court has correctly determined that when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *Puma*, 2020 WL 823079 at *4 (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).  That approach is the correct one here.  *See also United States v. McHugh*, No. 21-cr-453-JDB, --- F.Supp. 3d --- 2022 WL 296304 at *3 (D.D.C. Feb. 1, 2022) (to resolve a motion to dismiss, the court addresses only the legal sufficiency of the indictment and does not review the sufficiency of the evidence against the defendant or craft jury instructions). Since each count charged in this case alleges the time and place of the offense and echoes the language of the relevant statute, the charges are sufficient, and the defendant's claims must fail.

**II. Count One Is Properly Charged**

Count One of the indictment charges the defendant with violating 18 U.S.C. §§ 1512(c)(2) and 2.  ECF 9:1.  Congress enacted Section 1512 as a prohibition on "[t]ampering with a record or otherwise impeding an official proceeding" in Section 1102 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 807, and codified it in Chapter 73 of Title 18 of the United States Code, placing it within the pre-existing Section 1512 as subsection (c).  That prohibition applies to

(c) [w]hoever corruptly--

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or

> attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.

18 U.S.C. § 1512(c).

> Count One of the indictment charges:
>
> On or about January 6, 2021, within the District of Columbia and elsewhere, **MATTHEW THOMAS PURSE** attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.
>
> (**Obstruction of an Official Proceeding and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2)

ECF 9:1. The language of Count One tracks the language of Section 1512(c)(2) and provides the date and place of the offense.  It is facially sufficient.  Nevertheless, the defendant challenges the validity of Count One for numerous reasons.  None has merit.

### A.  The Certification of The Electoral College Vote Is An Official Proceeding

The defendant contends that Congress' certification of the Electoral College vote is not an "official proceeding" within the meaning of Section 1512(c)(2). ECF 34:11, 13-14.  In 18 U.S.C. § 1515(a), Congress defined the term "official proceeding" as used in Section 1512 to include "a proceeding before the Congress[.]" 18 U.S.C. § 1515(a)(1)(B).  The defendant argues that Congress' Certification of the Electoral College vote is not a proceeding before Congress. Every decision considering any version of this argument has rejected it—including this Court's decision in *United States v. Puma*, No. 21-cr-454-PLF, 2022 WL 823079 at *4-9 (D.D.C. Mar. 19, 2022).  *Accord United States v. Andries*, No. 21-cr-93-RC, 2022 WL 768684 at *3 (D.D.C. Mar. 14, 2022); *United States v. Miller*, 2022 WL 823070 at *5-6 (D.D.C. Mar. 7, 2022);  *United States v. Bozell*, No. 21-cr-216-JDB, 2022 WL 474144 at *3-5 (D.D.C. Feb. 16, 2022); *United States v.*

*Grider*, No. 21-cr-22-CKK, 2022 WL 392307 at *3-5 (D.D.C. Feb. 9, 2022); *United States v. McHugh*, 21-cr-453-JDB, ---F.Supp. 3d---, 2022 WL 296304 at *3-9 (D.D.C. Feb. 1, 2022); *United States v. Reffitt*, No. 21-cr-32-DLF (D.D.C. Dec. 29, 2021) (ECF 81:2-3); *United States v. Nordean*, No. 21-cr-175-TJK, ---F.Supp. 3d---, 2021 WL 6134595 at *4-6 (D.D.C. Dec. 28, 2021); *United States v. Montgomery*, No. 21-cr-46-RDM, 2021 WL 6134591 at *5-10 (D.D.C. Dec. 28, 2021); *United States v. Mostofsky*, 21-cr-138-JEB, ---F.Supp. 3d ---, 2021 WL 6049891 at *9-10 (D.D.C. Dec. 21, 2021); *United States v. Caldwell*, No. 21-cr-28-APM, ---F.Supp. 3d ---, 2021 WL 6062718 at *4-8 (D.D.C. Dec. 20, 2021); *United States v. Sandlin*, 21-cr-88-DLF, ---F.Supp. 3d---, 2021 WL 5865006 at *3-5 (D.D.C. Dec. 10, 2021).

The defendant ignores all of these rulings. Instead, he asks the Court to rely on the non-binding, out-of-Circuit opinions in *United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013), *United States v. Ramos*, 537 F.3d 439, 464 (5th Cir. 2008), and *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019).[3] According to the defendant, these decisions somehow require limiting the meaning of "a proceeding before Congress" to hearings which involve witness testimony or production of documentary evidence. ECF 34:15. In fact, none of these cases involved a proceeding before Congress. The *Ermoian* and *Young* cases involved FBI investigations, and *Ramos* concerned an internal investigation by an agency of employee conduct.  Neither the facts of these cases nor the sub-section of 1515(a) relevant to their reasoning have any application here.

---

[3] Out of context, the defendant also quotes from a Department of Justice manual.  The internal policies of the Department of Justice, however, do not create enforceable rights for criminal defendants or private individuals. *E.g.*, *United States v. Mahdi*, 598 F.3d 883, 896-97 (D.C. Cir.), *cert. denied*, 562 U.S. 971 (2010); *United States v. Booth*, 673 F.2d 27, 30 (1st Cir.), *cert. denied*, 456 U.S. 972 (1982); *United States v. Schwartz*, 787 F.2d 257, 267 (7th Cir. 1986); *United States v. Wilson*, 614 F.2d 1224, 1227 (9th Cir. 1980); *United States v. Bagnell*, 679 F.2d 826, 832 (11th Cir. 1982).

Despite these differences, the defendant cites these cases to argue that the history of Section 1512 somehow requires an official proceeding to be adjudicative in nature.  As this Court found in *Puma*, however, there is no such requirement.  2022 WL 823079 at *7.  None of the cases the defendant cites touch on the question of whether a proceeding before Congress should be construed narrowly to encompass only a subspecies of congressional proceeding.  *Id*., citing *Caldwell*, 2021 WL 6062718 at *6; *Andries*,  2022 WL 768684 at *6;  *Bozell,* 2022 WL 474144, at *5 ("The statute's prohibition on 'obstruct[ing], influenc[ing], or imped[ing] any official proceeding' contains no suggestion that it applies only to acts related to interfering with evidence.").  Requiring a proceeding before Congress to be adjudicative in nature and involving the administration of justice has also been rejected because "[a]s a matter of separation of powers, that is not what Congress does."  *Id*., citing *Montgomery*, 2021 WL 6134591, at *7; *see also  McHugh*, 2022 WL 296304, at *8 ("Requiring a § 1515 'proceeding' to be adjudicative would make 'a proceeding before the Congress' something close to a null set"); *see also Miller*, 2022 WL 823070 at *5 ("it makes little if any sense, in the context here, to read 'a proceeding before Congress' as invoking only the judicial sense of the word 'proceeding.' After all, the only proceedings of even a quasi-judicial nature before Congress are impeachment proceedings, and Miller has offered no reason to think Congress intended such a narrow definition here").

The defendant also asks this Court to adopt *Ramos* insofar as it looked to Section 1512(c)(2)'s enactment under the Sarbanes-Oxley Act of 2002 as a reason to limit the definition of an official proceeding.  According to the defendant, Sarbanes-Oxley was intended to prevent intimidation, obstruction, and related harms against victims and witnesses, and this purpose, according to the defense, supposedly indicates congressional intent to restrict an official proceeding to a formal environment where persons are called to appear or produce documents.

ECF 34:14-15.

More recent decisions from this district refute this argument.  As explained in *Montgomery*, 2021 WL 6134591 at *15-17 and summarized in *Puma*, 2022 WL 823079 at *8-9, Section 1512 was added to the Sarbanes-Oxley bill late in the legislative process as a floor amendment; it did not grow out of the committee process focused on corporate misconduct.  Instead, the provision was intended to close a loophole prohibiting acts that caused another to obstruct but not a perpetrator's own obstruction.  Elimination of that loophole provides no reason to believe that Congress intended to fix that problem only with respect to document and evidence destruction.  *Id*. *Ramos* did not account for the more specific details of Section 1512's enactment, providing further reason for this Court to remain unpersuaded by its reasoning.  "Statutes often reach beyond the principal evil that animated them." *Sandlin*, 2021 WL 5865006, at *9 (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79 (1998)).  Although the purpose for enacting a statute can sometimes be clarifying, "'[v]ague notions of a statute's 'basic purpose' are inadequate to overcome the words of its text regarding the specific issue under consideration.'"  *Puma* at *8, quoting *McHugh*, 2022 Wl 296304 at *8.

The certification of the Electoral College vote involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]." 3 U.S.C. § 15.  That Joint Session renders judgment on whether to certify the votes cast by Electors in the presidential election.  Under the Constitution, the Electors create "lists" of the presidential and vice-presidential candidates, which they "sign" and "certify" before sending to Congress.  U.S. Const. amend. XII.  Congress then decides whether to count those certified lists, or certificates in conformity with the Electoral Count Act.  3 U.S.C. § 15; *see* Vasan Kesavan, *Is the Electoral Count Act Unconstitutional?,* 80 N.C. L. Rev. 1653, 1659 (2002) (Under

the Electoral Count Act, "the President-elect is not elected by 'We the People' on election day, or even by the electors on the day they cast their votes, but by the joint convention of the Senate and House of Representatives on the day the electoral votes are formally counted"). As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it. 3 U.S.C. § 15. And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result." 3 U.S.C. § 16. The United States Constitution and a federal statute mandate this process, which proceeds before Congress in joint session. These formal proceedings before Congress fall within the plain language of Sections 1512(c)(2) and 1515(a)(1)(B). The defendant does not offer any valid or persuasive reason to conclude otherwise.

Instead, the defendant concludes this argument by stating that "The government has not, and cannot, provide any evidence that the Certification of the Electoral College vote is the type of hearing that the Section 1512 was designed to protect." ECF 34:15. This assertion is meritless because "[i]t is not, however, the government's burden to demonstrate, show, or establish anything at this point; that is what trials are for." *Safavian*, 429 F.Supp. 2d at 159. This Court should reject the defendant's attempt to make his motion a referendum on the government's evidence, along with the rest of the defendant's arguments.

**B. This Court Should Reject the Defendant's Arguments Under *Miller***

The defendant seeks to have this Court apply the ruling in *Miller* that Section 1512(c)(2) requires proof of "some action with respect to a document, record or other object" taken "in order to corruptly obstruct, impede or influence an official proceeding." *United States v. Miller*, No. 21-cr-00119, 2022 WL 823070, *15 (D.D.C. March 7, 2022) (Nichols, J.). This Court has already

rejected the analysis in *Miller*, *see Puma*, 2020 WL 823079 at *3, and should do so again here.

Focusing on the word "otherwise" in Section 1512(c)(2), The Honorable Carl J. Nichols in *Miller* identified "three possible readings" of Section 1512(c)(2)'s scope. *Miller,* 2022 WL 823070, at *6-11. First, Section 1512(c)(2) could serve as a "clean break" from Section 1512(c)(1), *id.* at *6-8, a reading that "certain courts of appeals have adopted," *id.* at 14. Judge Nichols, however, identified multiple "problems" with that interpretation, all focused on the interpretation of the term "otherwise." Judge Nichols reasoned that reading "otherwise" in Section 1512(c)(2) to mean "in a different way or manner" is "inconsistent" with the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), which considered whether driving under the influence qualified as a "violent felony" under the now-defunct residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). *Miller,* 2022 WL 823070, at *7. Judge Nichols accordingly rejected the first interpretation. *Id.* at 19-20. Second, in Judge Nichols's view, Section 1512(c)(1) could "provide[] examples of conduct that violates" Section 1512(c)(2). *Id.* at *8-9. Third, Section 1512(c)(2) could be interpreted as a "residual clause" for Section 1512(c)(1), such that both provisions are linked by the document-destruction and evidence-tampering "conduct pr[o]scribed by" Section 1512(c)(1). *Id.* at *9-11. After considering Section 1512(c)'s structure, "historical development," and legislative history, Judge Nichols found "serious ambiguity" as to which of the two "plausible" readings—the second and third readings identified above—Congress intended. Applying what Judge Nichols described as principles of "restraint," Judge Nichols then interpreted Section 1512(c)(2) to mean that a defendant violates the statute only when he or she "take[s] some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding" (the third reading). *Id.* at *15. Because, in Judge Nichols's view, the indictment did not encompass an

allegation that Miller took any such action, Judge Nichols dismissed the count charging Section 1512(c)(2).  *Id.*

Both before and after the ruling in *Miller*, judges on this Court have rejected a document-focused interpretation of Section 1512(c)(2).  In *United States v. Sandlin*, No. 21-cr-88, 2021 WL 5865006 (D.D.C. Dec. 10, 2021), the Honorable Dabney L. Friedrich found that Section 1512(c)(2)'s terms are "expansive and seemingly encompass all sorts of actions that affect or interfere with official proceedings" and determined that the use of the word "otherwise" in Section 1512(c)(2) "clarifies" that it "prohibits obstruction by means *other than* document destruction*."  Id*. at *5-*6.  The Court did not view the Supreme Court's decision in *Begay* as altering that conclusion, because *Begay* rested on the ACCA's different statutory language and history.  *Id.* at *6.  Judge Friedrich also rejected the defendant's reliance on *Yates v. United States*, 574 U.S. 528 (2015) (plurality opinion).  *Sandlin*, 2021 WL 5865006, at *6-*8.  Finally, Judge Friedrich concluded that, although a plain-text construction of Section 1512(c)(2) creates "substantial overlap" with other provisions in Section 1512 and Chapter 73, it does not create "intolerable overlap."  *Id.* at *7-*8 (citing *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part and dissenting in part)) (emphasis omitted).

Decisions from other judges on this Court before *Miller* followed suit.  For example, in *United States v. Caldwell*, No. 21-cr-28, 2021 WL 6062718 (D.D.C. Dec. 20, 2021), the Honorable Amit P. Mehta concluded that Section 1512(c)(2) is not "limited" to conduct "affecting the integrity or availability of evidence in a proceeding."  *Id.* at *11 (brackets and internal quotation marks omitted); *see id.* at *11-*19 (addressing Section 1512(c)(2)'s text and structure, *Begay*, and *Yates*).  In *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891 (Dec. 21, 2021), the Honorable James E. Boasberg found persuasive the analysis in *Sandlin* and *Caldwell*.  *See id.* at

*11.  In *United States v. Nordean*, 21-cr-175, 2021 WL 6134595 (D.D.C. Dec. 28, 2021), the Honorable Timothy J. Kelly reasoned that an interpretation of Section 1512(c)(2) limiting it to "impairment of evidence" could not "be squared with" Section 1512(c)(2)'s "statutory text or structure." *Id.* at *6; *see id.* at *6-*9 (addressing *Yates* and superfluity concerns).  And in *United States v. Montgomery*, 21-cr-46, 2021 WL 6134591 (D.D.C. Dec. 28, 2021), the Honorable Randolph D. Moss reached the same conclusion following an extended discussion of Section 1512(c)'s text, structure, and legislative history, as well as the *Begay* and *Yates* decisions.  *Id.* at *10-*18; *see also United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (Bates, J.) (reaching the same conclusion on the scope of Section 1512(c)(2)); *United States v. Grider*, 21-cr-22, 2022 WL 392307, at *5-*6 (D.D.C. Feb. 9, 2022) (Kollar-Kotelly, J.) (same). Following the decision in *Miller*, two judges on this Court have disagreed with its analysis.  In denying a defendant's post-trial motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure, Judge Friedrich indicated that she was "not inclined to reconsider" her ruling in *Sandlin* and described her points of disagreement with *Miller*.  *United States v. Reffitt*, 21-cr-32, Trial Tr. 1502-05 (Mar. 8, 2022) (attached as Exhibit 1).  And in *Puma*, 2022 WL 823079, this Court concluded that the word "otherwise" in Section 1512(c)(2) "clarifies" that a defendant violates that section "through 'obstruction by means *other than* document destruction.'"  *Id.* at *12 (quoting *Mostofsky*, 2022 WL 6049891, at *11).  In reaching that conclusion, this Court rejected *Miller*'s "premise that any 'genuine ambiguity persist[s],'" *id.* at *12 n.4 (quoting *Miller* at *7), and therefore found the rule of lenity "inapplicable," *id.*

Rejecting *Miller*'s construction of Rule 1512(c)(2) is appropriate given that decision's reliance on the rule of lenity.  As many other judges have concluded after examining the statute's text, structure, and history, there is no genuine—let alone "grievous" or "serious"—ambiguity.

"When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83 (1955). That principle underlies the "venerable" rule of lenity, *Miller* at *8 (quoting *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (en banc) (Bibas, J., concurring)), which ensures that "legislatures and not courts" define criminal activity given the "seriousness of criminal penalties" and the fact that "criminal punishment usually represents the moral condemnation of the community." *United States v. Bass*, 404 U.S. 336, 348 (1971); *see Liparota v. United States*, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

The rule of lenity, however, does not come into play when a law merely contains some degree of ambiguity or is difficult to decipher. The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019). In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted). "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be solved.'" *Wooden*, 142 S. Ct. at 1074 (Kavanaugh, J., concurring) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

The *Miller* opinion erroneously applied the rule of lenity. There, Judge Nichols referred

to the "'grievous' ambiguity" standard when initially discussing the rule, *see Miller* at *9, and found "a serious ambiguity" regarding the conduct that Section 1512(c)(2) reaches, *id.* at 28; *see also id.* at 22 ("[T]he Court does not believe that there is a single obvious interpretation of the statute."). But *Miller*'s interpretation of Section 1512(c)(2)'s scope places undue emphasis on a single word ("otherwise") and a single Supreme Court decision (*Begay*) that interpreted that word as used in an entirely different statute and statutory context. A proper reading of Section 1512(c)(2)'s text, structure, and history demonstrates that Section 1512(c)(2) prohibits any corrupt conduct that intentionally obstructs or impedes an official proceeding, not merely where a "defendant ha[s] taken some action with respect to a document, record, or other object," *id.* at 28, to corruptly obstruct an official proceeding.

Simply put, the rule of lenity is "inapplicable" here. *Puma*, 2022 WL 823079, at *12 n.4. Congress made clear in Section 1512(c)(2) that it sought to protect the integrity of official proceedings—regardless of whether a defendant threatens such a proceeding by trying to interfere with the evidence before that tribunal or threatens the tribunal itself. Any such distinction between these forms of obstruction produces the absurd result that a defendant who attempts to destroy a document being used or considered by a tribunal violates Section 1512(c) but a defendant who threatens to use force against the officers conducting that proceeding escapes criminal liability under the statute. Not only does the rule of lenity not require such an outcome, but such an application loses sight of a core value that animates the lenity rule: that defendants should be put on notice that their conduct is criminal and not be surprised when prosecuted. *See Wooden*, 142 S. Ct. at 1082 (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws."). It would strain credulity for any defendant who was focused on stopping an official proceeding from taking place

to profess surprise that his conduct could fall within a statute that makes it a crime to "obstruct[],
influence[], or impede[] [any] official proceeding or attempt[] to do so."  18 U.S.C. § 1512(c)(2).
Confirming the absence of ambiguity—serious, grievous, or otherwise—is that despite Section
1512(c)(2)'s nearly 20-year existence, no other judge has found ambiguity in Section 1512(c)(2),
including nine judges on this Court considering the same law and materially identical facts.

> **1.   Section 1512(c)(2)'s text and structure make clear that it covers obstructive
> conduct "other" than the document destruction covered in Section
> 1512(c)(1).**

While Section 1512(c)(1) prohibits the corrupt destruction or alteration of documents,
records, and other objects in connection with an official proceeding, Section 1512(c)(2) prohibits
corrupt conduct that "otherwise" obstructs, influences, or impedes an official proceeding.   Before
the decision in *Miller*, every reported case to have considered the scope of Section 1512(c)(2),[4]
and every judge on this Court to have considered the issue in cases arising out of the events at the
Capitol on January 6, 2021, concluded that Section 1512(c)(2) "prohibits obstruction by means
*other than* document destruction."  *Sandlin*, 2021 WL 5865006, at \*5.  That conclusion follows

---

[4] *See, e.g.*, *United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off
suspects about issuance of arrest warrants before "outstanding warrants could be executed, thereby
potentially interfering with an ongoing grand jury proceeding"), *vacated on other grounds*, 139 S.
Ct. 2772 (2019); *United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (defendant
attempted to secure a false alibi witness while in jail for having stolen a vehicle); *United States v.
Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (defendant solicited information about a grand
jury investigation from corrupt "local police officers'); *United States v. Ahrensfield*, 698 F.3d
1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover
investigation to target); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (defendant
disclosed identity of an undercover officer, thus preventing him from making controlled purchases
from methamphetamine dealers); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (false
testimony before a grand jury); *United States v. Reich*, 479 F.3d 179, 185-87 (2d Cir. 2007)
(Sotomayor, J.) (defendant faxed an opposing party a forged court order that purported to recall
and vacate a legitimate order, causing the opposing party to withdraw an application for a writ of
mandamus).

inescapably from the text of Section 1512(c)'s two subsections read together: Section 1512(c)(1) "describes how a defendant can violate the statute by 'alter[ing], destroy[ing], mutilat[ing], or conceal[ing]' documents for use in an official proceeding," *Puma*, 2022 WL 823079, at *12, while "otherwise" in Section 1512(c)(2) "signals a shift in emphasis . . . from actions directed at evidence to actions directed at the official proceeding itself," *Montgomery*, 2021 WL 6134591, at *12 (internal quotation marks omitted).

Judge Nichols was thus mistaken in concluding that this interpretation either "ignores" that "otherwise" is defined with reference to "something else," namely Section 1512(c)(1), or fails to "give meaning" to the term "otherwise." *Miller*, at *6-7. Far from suggesting that Section 1512(c)(2) is "wholly untethered to" Section 1512(c)(1), *id.* at *7, "otherwise" as used in Section 1512(c)(2) indicates that Section 1512(c)(2) targets obstructive conduct in a manner "other" than the evidence tampering or document destruction that is covered in Section 1512(c)(1). That understanding of "otherwise" is both fully consistent with each definition *Miller* surveys, *see id.* at 11 (noting that "otherwise" in Section 1512(c)(2) may plausibly be read as "in a different way or manner; differently"; "in different circumstances: under other conditions"; or "in other respects") (internal quotation marks omitted), and ensures that the term is not rendered "pure surplusage," *id.* at 12. In sum, "otherwise" makes clear that Section 1512(c)(1)'s scope encompasses document destruction or evidence tampering that corruptly obstructs an official proceeding, while Section 1512(c)(2)'s ambit includes "other" conduct that corruptly obstructs an official proceeding.

The fact that some cases "could be brought under either or both prongs of Section 1512(c)," *Montgomery*, 2021 WL 6134591, at *12, does not imply that Section 1512(c)(2) "would have the same scope and effect . . . if Congress had instead omitted the word 'otherwise,'" *Miller*, at *12.

For one thing overlap is "not uncommon in criminal statutes," *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014), and Section 1512(c)(2)'s broader language effectuates its design as a backstop in the same way that a "generally phrased residual clause . . . serves as a catchall for matters not specifically contemplated." *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009).   Moreover, interpreting the interplay of Sections 1512(c)(1) and 1512(c)(2) in this way does not foreclose a defendant from arguing that his conduct falls outside Section 1512(c)(2)'s scope because his document destruction or evidence concealment is prohibited and punishable only under Section 1512(c)(1).   To be sure, practical considerations may militate against seeking such a potentially Pyrrhic victory—where success leads to reindictment under Section 1512(c)(1)—but those practical considerations provide no reason to reject the straightforward interpretation of Section 1512(c) as divided between a provision that targets evidence destruction (Section 1512(c)(1)) and a provision that applies to "otherwise" obstructive conduct (Section 1512(c)(2)).   And, in any event, the "mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either." *Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005).

*Miller* further concluded that interpreting "otherwise" in the manner described above is "inconsistent" with *Begay*, where, in its view, analysis of what "'otherwise' meant" was "[c]rucial" to the Supreme Court's analysis. *Miller* at *7.   That conclusion is flawed in several respects.   First, in considering whether driving under the influence was a "violent felony" for purposes of the ACCA's residual clause, which defines a "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury," 18 U.S.C. § 924(e)(2)(B)(ii), the Supreme Court in *Begay* addressed a statutory provision that has an entirely different structure than Section 1512(c)(2). *See Sandlin*, 2021 WL 5865006, at *6 (distinguishing *Begay* on the ground that, unlike the ACCA

20

residual clause, the "otherwise" in Section 1512(c)(2) is "set off by both a semicolon and a line break"); *United States v. Ring*, 628 F.Supp.2d 195, 224 n.17 (D.D.C. 2009).  Unlike in the ACCA residual clause, the "otherwise" phrase in Section 1512(c)(2) "stands alone, unaccompanied by any limiting examples."[5]  *Ring*, 628 F.Supp.2d at 224 n.17.  In other words, the "key feature" in Section 924(e)(2)(B)(ii) at issue in *Begay*, "namely, the four example crimes," 553 U.S. at 147, is "absent" in Section 1512(c)(2).  *Caldwell*, 2021 WL 6062718, at *14.  Although *Miller* recognized the structural difference between the ACCA residual clause and Section 1512(c)(2), *see id*. at *18-19, it offered no reason to import *Begay*'s interpretation of "otherwise" to Section 1512(c)(2)'s differently structured provision.

Second, describing the Supreme Court's interpretation of "what 'otherwise' meant" as "[c]rucial" to that Court's decision in *Begay* is an inaccurate description of *Begay*'s analysis.  The majority in *Begay* noted first that the "listed examples" in Section 924(e)(2)(B)(ii)—burglary, arson, extortion, or crimes involving explosives—indicated that the ACCA residual clause covered only similar crimes.  *Begay*, 553 U.S. at 142.  Those examples, the majority reasoned, demonstrated that Section 924(e)(2)(B)(ii) was not designed "to be all encompassing," but instead to cover only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves."  *Id.* at 142-43.  The majority next drew support for its conclusion from Section 924(e)(2)(B)(ii)'s history, which showed that Congress both opted for the specific

---

[5] Judge Nichols suggested (*Miller* at *8) that "[t]he government also presents an alternative reading" that Section 1512(c)(1) "provides examples of conduct that violates" Section 1512(c)(2). *Id.* at 15.  That is incorrect.  Neither the government nor Miller nor (to the government's knowledge) any court has proposed or adopted that construction of Section 1512(c)(2). Considering an interpretation that no party advocates and no court has adopted injects the kind of "front-end ambiguity" that "lead[s] to significant inconsistency, unpredictability, and unfairness in application." *Wooden*, 142 S. Ct. at 1076 (Kavanaugh, J., concurring).

examples in lieu of a "broad proposal" that would have covered offenses involving the substantial use of physical force and described Section 924(e)(2)(B)(ii) as intending to encompass crimes "similar" to the examples. *Id.* at 143-44.  In the final paragraph of that section of the opinion, the majority addressed "otherwise," noting that the majority "[could ]not agree" with the government's argument that "otherwise" is "*sufficient* to demonstrate that the examples do not limit the scope of the clause" because "the word 'otherwise' *can* (we do not say *must*, cf. *post* at [150-52] (Scalia, J. concurring in judgment)) refer to a crime that is similar to the listed examples in some respects but different in others." *Id.* at 144.

A tertiary rationale responding to a party's argument where the majority refrains from adopting a definitive view of "otherwise" cannot be described as "crucial."  The majority's "remarkably agnostic" discussion of "otherwise" in *Begay* explicitly noted that the word may carry a different meaning where (as here) the statutory text and context suggests otherwise. *Montgomery*, 2021 WL 6134591, at *11; *see Caldwell*, 2021 WL 6062718, at *14 (declining to depart from the "natural reading" of "otherwise" as "'in a different way or manner'" based on the discussion in *Begay*).  In short, the majority in *Begay* "placed little or no weight on the word 'otherwise' in resolving the case."  *Montgomery*, 2021 WL 6134591, at *11.

Third, whatever the significance of the majority's interpretation of "otherwise" in *Begay*, *Begay*'s ultimate holding demonstrates why this Court should not embark on imposing an extra-textual requirement within Section 1512(c)(2).  The Supreme Court held in *Begay* that Section 924(e)(2)(B)(ii) encompasses only crimes that, similar to the listed examples, involve "purposeful, violent, and aggressive conduct."  553 U.S. at 144-45.  But "*Begay* did not succeed in bringing clarity to the meaning of the residual clause." *Johnson v. United States*, 576 U.S. 591, 600 (2015). Just as the *Begay* majority "engraft[ed]" the "purposeful, violent, and aggressive conduct"

requirement onto the ACCA's residual clause, 553 U.S. at 150 (Scalia, J., concurring in judgment) (internal quotation marks omitted), so too *Miller* engrafts onto Section 1512(c)(2) the requirement that a defendant "have taken some action with respect to a document, record, or other object" to obstruct an official proceeding, *Miller* at *15. In the nearly 20 years since Congress enacted Section 1512(c)(2), no reported cases have adopted *Miller*'s interpretation, and for good reason. That interpretation would give rise to unnecessarily complex questions about what sort of conduct qualifies as "taking some action with respect to a document" in order to obstruct an official proceeding. *Cf. United States v. Singleton*, No. 06-cr-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished) (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-cr-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceedings [*sic*] through his conduct in relation to a tangible object").[6] In brief, the *Miller*'s interpretation is likely to give rise to the very ambiguity it purports to avoid.

     *Miller*'s observation that only "certain courts of appeals," *Miller* at *7, have interpreted Section 1512(c)(2) to reach conduct that obstructs an official proceeding other than document destruction significantly understates the case law. Every reported case—both in the courts of

---

[6] *Miller*'s interpretation of Section 1512(c)(2) resembles the reading given in *Singleton* and *Hutcherson*, both of which are unpublished and neither of which it cites. As noted in the main text, no other court, at least in a reported opinion, appears to have adopted the nexus-to-tangible-evidence-or-a-tangible-object standard articulated in *Singleton* and *Hutcherson*. *See United States v. De Bruhl-Daniels*, 491 F.Supp.3d 237, 250-51 (S.D. Tex. 2020) (identifying *Singleton* and *Hutcherson* as outliers from the "most popular—and increasingly prevalent—interpretation of § 1512(c)(2) [as] an unlimited prohibition on obstructive behavior that extends beyond merely tampering with tangible items"); *Ring*, 628 F.Supp.2d at 225 n.18 (disagreeing with *Singleton* and *Hutcherson* but finding that the alleged conduct at issue in that case involved "some nexus to documents"). No court of appeals has cited either case.

appeals and in district courts—has interpreted Section 1512(c)(2) in that manner.  *See Miller* at

\*7-9 (discussing cases).  Moreover, *Miller*'s effort to distinguish one of those cases, *United States*

*v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015), misses the mark.  That *Petruk* did not cite or discuss

*Begay*, *Miller* at \*8, says nothing about the logic of its analysis, particularly given how

"remarkably agnostic" *Begay*'s discussion of "otherwise" is.  *See Montgomery*, 2021 WL 6134591,

at \*11.  *Miller* likewise faulted *Petruk* for misreading the Supreme Court's decision in *United*

*States v. Aguilar*, 515 U.S. 593 (1995), where the Supreme Court interpreted the omnibus clause

in 18 U.S.C. § 1503 to require a "relationship in time, causation, or logic," *id.* at 599, between the

obstructive conduct and the proceeding—a grand jury investigation—at issue in the defendant's

case.  But the restraint the Supreme Court exercised by interpreting Section 1503 to require that

"nexus" is paralleled by interpreting the same nexus requirement to apply to Section 1512(c)(2)—

as other judges on this Court have done, *see Miller* at \*8 (explaining that the nexus requirement

applies to Section 1512(c)(2)); *Montgomery*, 2021 WL 6134591, at \*20-\*21—and not by imposing

an additional, atextual requirement that a defendant must "have taken some action with respect to

a document" for his conduct to fall within the scope of Section 1512(c)(2).[7]

### 2. Other tools of statutory interpretation do not undermine that straightforward reading.

Because Section 1512(c)(2)'s text and context make clear that it reaches conduct that

obstructs, influences, or impedes an official proceeding in a manner other than document

---

[7] *Miller's* similar criticism of *United States v. Burge*, 711 F.3d 803 (7th Cir. 2013), Miller at \*8
n.7, fails for the same reason.  And *Miller's* related criticism that *United States v. Volpendesto*,
746 F.3d 273 (7th Cir. 2014), which relied in part on *Burge*, "did not even involve a prosecution
under § 1503, let alone § 1512(c)(2)," *Miller* at \*8 n.7, falls short.  The defendants in *Volpendesto*
were prosecuted for, among other things, conspiracy to obstruct an official proceeding, in violation
of 18 U.S.C. § 1512(k), and the jury was instructed on the elements of 18 U.S.C. § 1512(c)(2).
*See United States v. Volpendesto*, 08-cr-115, Dkt. No. 518, at 88-95 (N.D. Ill. Dec. 22, 2010).

destruction or evidence tampering, resorting to other tools of statutory interpretation is not necessary.   In any event, those tools reinforce that straightforward interpretation of Section 1512(c)(2)'s scope.  *See Miller* at *4-9.  In reaching a contrary conclusion, *Miller* erred in several respects.

First, *Miller* suggested that reading Section 1512(c)(2) consistently with its plain language and structure as described above would "introduce something of an internal inconsistency" because Section 1512(c)(2) would have greater breadth than neighboring provisions in Section 1512.  *Miller* at *12; *see id.* (describing Section 1512(c)(2) as an "elephant[] in [a] mousehole[]").  That reasoning is inconsistent with *Yates*, where a plurality of the Supreme Court recognized that Section 1512 consisted of "broad proscriptions," not "specialized provisions expressly aimed at corporate fraud and financial audits."   574 U.S. at 541 (plurality opinion).   Moreover, the narrowing construction *Miller* imposes on Section 1512(c)(2) fails to consider that Section 1512(c)(2) reaches more broadly precisely because other provisions within Section 1512 leave gaps that Section 1512(c)(2) fills.  *Cf. Catrino v. United States*, 176 F.2d 884, 887 (9th Cir. 1949) ("The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.").

Second, *Miller* worried that a reading of Section 1512(c)(2) that encompasses obstructive conduct unrelated to documents or records would give rise to "substantial superfluity problems."  *Id*. at *8.  But even a "broad interpretation of § 1512(c)(2) does not entirely subsume numerous provisions within the chapter," and any overlap with other provisions in Section 1512 is "hardly remarkable."  *Sandlin*, 2021 WL 5865006, at *8; *accord Nordean*, 2021 WL 6134595, at *8.  More troubling, by interpreting Section 1512(c)(2) to require "some action with respect to a document,"

*Miller* at \*15, that decision risks rendering Section 1512(c)(2) itself superfluous in light of the "broad ban on evidence-spoliation" in Section 1512(c)(1), *Yates*, 574 U.S. at 541 n.4 (plurality opinion) (internal quotation marks omitted). Moreover, because Section 1512(c)(1) includes both completed and *attempted* evidence tampering, *see* 18 U.S.C. § 1512(c)(1) (reaching "[w]hoever corruptly . . . alters, destroys, mutilates, or conceals a record, document, or other object, *or attempts to do so*) (emphasis added), it is unlikely that a defendant who "take[s] some action with respect to a document, record, or other object," *Miller* at \*15, has not also taken a "substantial step" toward altering, destroying, mutilating, or concealing that document sufficient to fall within the scope of Section 1512(c)(1). *See United States v. Hite*, 769 F.3d 1154, 1162 (D.C. Cir. 2014) (explaining that the "general meaning of 'attempt' in federal criminal law" is "an action constituting a 'substantial step' towards commission of a crime and performed with the requisite criminal intent").

The canon against superfluity, which is "strongest when an interpretation would render superfluous another part of the same statutory scheme," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013), is even stronger when it renders superfluous "other provisions in the *same enactment*." *Freytag v. Comm'r*, 501 U.S. 868, 877 (1991) (emphasis added; internal quotation marks omitted); *cf. Yates*, 574 U.S. at 543 (plurality opinion) ("We resist a reading of § 1519 that would render superfluous an entire provision passed . . . as part of the same Act."). That principle comes into play here because Sections 1512(c)(1) and 1512(c)(2) were enacted together as part of the Sarbanes-Oxley Act. *See Miller* at \*8.

Third, *Miller*'s discussion of statutory and legislative history, *id*. at \*12-14, provides no sound reason to deviate from the straightforward interpretation of Section 1512(c)(2) described above. For example, *Miller* suggested that Congress would have had no reason to add Section

1512(a)(2)(B) three months after enacting Section 1512(c)(2) if the latter provision were construed broadly. *Miller* at *13. Section 1512(a)(2)(B) prohibits the use or threatened use of physical force against "any person" with the intent to "cause or induce any person" to take one of four actions, including "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] an object with intent to impair the integrity or availability of the object for use in an official proceeding." 18 U.S.C. § 1512(a)(2)(B)(ii). But as *Miller* noted, *id*. at *11, unlike Section 1512(a)(2)(B), Section 1512(c) aimed generally to impose "direct" liability for obstructive conduct that was not directed at intimidating or influencing another person, *see id*., ECF 74, at 16.[8] Understood in that light, Section 1512(a)(2)(B) operates harmoniously with both subsections in Section 1512(c): Section 1512(a)(2)(B)(ii) reaches a defendant's use of force or threatened use of force at *another person* in order to cause that person to destroy documents in connection with an official proceeding; Section 1512(c)(1) reaches a defendant's direct destruction of documents in connection with an official proceeding; and Section 1512(c)(2) reaches a defendant's non-document-related conduct that obstructs or impedes an official proceeding. And while the legislators who enacted Section 1512(c) in the Sarbanes-Oxley Act undoubtedly had document shredding foremost in mind, *see Miller* at *13-14; *accord Miller* at *14 (noting floor statements addressing concern about document shredding in the *Arthur Andersen* prosecution), "it is unlikely that Congress was concerned with

---

[8] *Miller* suggested (*id*. at 12 n.10) that Section 1512(c)(2) could be read as "creating 'direct' liability for the other types of conduct covered by § 1512—that is, that it makes criminal an individual doing directly those things for which the rest of § 1512 requires action directed at another person." Although the government's supplemental brief has described Section 1512(c)(2) in those terms, *see Miller*, 21-cr-119-CJN (ECF 74, at 16) ("Section 1512(c) aimed at closing a 'loophole' in Section 1512: the existing prohibitions did not adequately criminalize a defendant's *personal* obstructive conduct *not* aimed at another person."), Judge Nichols decided (*Miller* at *22 n.10) "not [to] address" the interpretation "further" because "[n]either party presses this argument (or anything like it)."

only the type of document destruction at issue in the *Arthur Andersen* case."  *Montgomery*, 2021 WL 6134591, at *16.  In other words, "there is no reason to believe that Congress intended to fix that problem only with respect to 'the availability or integrity of evidence.'"  *Id.*

Finally, an interpretation of Section 1512(c)(2) that imposes criminal liability only when an individual takes direct action "with respect to a document, record, or other object" to obstruct a qualifying proceeding leads to absurd results.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (rejecting interpretation of a criminal statute that would "produce results that were not merely odd, but positively absurd").  That interpretation would appear, for example, not to encompass an individual who seeks to "obstruct[], influence[], or impede[]" a congressional proceeding by explicitly stating that he intends to stop the legislators from performing their constitutional and statutory duties to certify Electoral College vote results by "drag[ging] lawmakers out of the Capitol by their heels with their heads hitting every step," *United States v. Reffitt*, 21-cr-32 (DLF), Trial Tr. 1502, carrying a gun onto Capitol grounds, *id.* at 1499, and then leading a "mob and encourag[ing] it to charge toward federal officers, pushing them aside to break into the Capitol," *id.* at 1501-02, unless he also picked up a "document or record" related to the proceeding during that violent assault.  The statutory text does not require such a counterintuitive result.

### C.  Evidence Concerning The Defendant's Entry Into The Capitol Cannot Support Dismissal

The defendant maintains that he could not have violated Section 1512 by obstructing, influencing or impeding Certification of the Electoral College vote, or attempting to do so, because when he entered the Capitol, the Certification proceedings had already adjourned.  ECF 34:23-24. For numerous reasons, this claim is meritless.

First, Section 1512(c)(2) nowhere requires entry into the Capitol or any other building; that

is simply not an element of the offense.  There is also no reason to assume that the only means of obstruction in this case involved entry into the Capitol. *See, e.g., Reffitt*, 21-cr-32 (DLF) (defendant who did not enter Capitol convicted for obstruction under Section 1512(c)(2)).  In any event, the United States is not required under the terms of Section 1512 to prove if or when the defendant entered the Capitol, how long he stayed there, or whether Congress was present or in session.  None of these details is an offense element, and addressing them or assessing their significance would require the Court to engage in finding facts beyond the four corners of the indictment.  Such fact-finding is not appropriate in the context of a motion to dismiss.

The defendant theorizes that his presence in the Capitol was not obstructive.  He contends the United States has "proffered" facts that somehow establish it was impossible for him to obstruct the Certification process.  ECF 34:23. His contention –which the government disputes—is premature because it is the jury, not this Court, that resolves factual disagreements.  *See Safavian*, 429 F. Supp. 2d at 159 (defendant's arguments about the probative value and sufficiency of the evidence were better left for a jury to decide); *Puma* at *11-12 (identical claim about defendant's presence in the Capitol "was argument about facts to be litigated at trial, not whether the indictment properly states a claim").

Because the defendant's argument about his entry amounts to nothing more than a pretrial challenge to the sufficiency of the evidence and demonstrates nothing about the legal sufficiency of the indictment, his argument cannot justify dismissal.

### D. The Term "Corruptly" In Section 1512 Is Not Unconstitutionally Vague

The defendant protests that Section 1512 is unconstitutionally vague.  He is wrong.

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const.

amends. V, XIV.  An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'"  *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)).  To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute."  *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).  "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'"  *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)).  Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application.  *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974).  The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es]

not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107

(quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)).  A statute is instead vague where it fails

to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971).

"As a general matter," however, a law is not constitutionally vague where it "call[s] for the

application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where

a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at

603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

        The defendant fails to overcome the strong presumption that Section 1512(c)(2) passes

constitutional muster.  *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963)

("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold

many times that statutes are not automatically invalidated as vague simply because difficulty is

found in determining whether certain marginal offenses fall within their language.").  Section

1512(c)(2) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or

"indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S.

at 306, nor does it require application of a legal standard to an "idealized ordinary case of the

crime," *Johnson*, 576 U.S. at 604.  Section 1512(c)(2)'s prohibition on "corruptly . . . obstruct[ing],

influenc[ing], or imped[ing]" an "official proceeding" gives rise to "no such indeterminacy."

*Williams*, 553 U.S. at 306.  The statute requires that a defendant, acting with consciousness of

wrongdoing and intent to obstruct, attempts to or does undermine or interfere with a statutorily

defined official proceeding.  While "it may be difficult in some cases to determine whether these

clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and

intent—the state of men's minds—having before them no more than evidence of their words and

conduct, from which, in ordinary human experience, mental condition may be inferred.'"  *Id.*

(quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).

The defendant's more targeted attack on "corruptly," relying on *United States v. Poindexter*, is equally unavailing. As noted above, the D.C. Circuit in *Poindexter* held that the term "corruptly" was "vague . . . in the absence of some narrowing gloss." 951 F.2d at 378. *Poindexter* is inapposite for three reasons.[9]

First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct." 951 F.2d at 385. Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial. *Id*. at 629-30. Other courts have similarly recognized "the narrow reasoning used in *Poindexter*" and "cabined that vagueness holding to its unusual circumstances." *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see also, e.g.*, *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503). The defendants' invocation of *Poindexter* accordingly fails to establish that Section 1512(c) suffers the same constitutional indeterminacy.

Second, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). There, the Court explained the terms "'[c]orrupt" and

---

[9] *Poindexter* was also superseded in significant part by the False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459. As codified at 18 U.S.C. § 1515(b), the Act provides that the term "corruptly" in § 1505 "means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement."

'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id*. at 705 (citation omitted).  In doing so, the Court "did not imply that the term was too vague."  *Edwards*, 869 F.3d at 502.  Third, and as noted above, courts have encountered little difficulty when addressing "corruptly" in Section 1512(c)(2) following *Arthur Andersen*.  *See, e.g., Puma* at 10 (reviewing January 6 cases construing corruptly and finding they support a consensus that Section 1512(c) clearly punishes those who endeavor to obstruct an official proceeding by acting with a corrupt purpose, or ... by independently corrupt means, or both).  Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.

The defendant's attempt to establish vagueness concludes with his return to premature arguments about the sufficiency of the evidence.  He claims, inaccurately, that Count One does not allege that he acted with intent to obstruct Certification.  Count One alleges that the defendant "attempted to and did corruptly obstruct, influence and impede an official proceeding, specifically, Congress' certification of the Electoral College vote . . ."  ECF 9:1. The term corruptly addresses the defendant's intent.  Nevertheless, he maintains the United States cannot allege his intent because of facts outside the indictment or Section 1512, such as the timing of his entry into the Capitol and other extraneous claims.  As this Court found in *Puma*, however, contentions of this kind concern facts to be proven or disproven at a trial, and not with respect to a motion to dismiss.  *Id*. at *10-11.  The defendant's vagueness claim should be denied.

### III.  Counts Two and Three Are Properly Charged

The defendant also seeks dismissal of Counts Two and Three which both charge violations under 18 U.S.C. § 1752(a).  As to each count, the defendant's arguments lack merit.

Section 1752(a) provides that:

Whoever---

(1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;

(2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact impedes or disrupts the orderly conduct of Government business or official functions; . . .

or attempts or conspires to do so, shall be punished . . .

*Id.* Section 1752 defines "restricted grounds" to include "any posted, cordoned off, or otherwise restricted area … of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting[.]" 18 U.S.C. §1752(c)(1)(B).

Count Two alleges that:

On or about January 6, 2021, in the District of Columbia, **MATTHEW THOMAS PURSE,** did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting, without lawful authority to do so.

(**Entering and Remaining in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(1))

ECF 9:2. Count Three alleges:

On or about January 6, 2021, in the District of Columbia, **MATTHEW THOMAS PURSE,** did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

(**Disorderly and Disruptive Conduct in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(2))

ECF 9:2.

The defendant principally contends that the Counts Two and Three are defective because they were required to—but did not—allege that the United States Secret Service designated the "restricted area" into which the defendant is alleged to have unlawfully entered. That contention is incorrect because Section 1752's plain text includes no such requirement.  Courts in this district have rightly rejected this contention. *See Puma*, 2022 WL 823079 at *14-16; *Griffin*, 2021 WL 2778557; *Mostofsky*, 2021 WL 6049891, at *12–*13, *Nordean,* 2021 WL 6134595, at *18; *McHugh,* 2022 WL 296304, at *18-20.

In short, Section 1752 "prohibits persons from knowingly entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting." *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd,* 831 F. App'x 513 (D.C. Cir. 2020).  Section 1752 therefore "focuses on perpetrators who knowingly enter a restricted area around a protectee, not on how it is restricted or who does the restricting." *Griffin*, 2021 WL 2778557, at *6.

To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *see Public Investors Arbitration Bar Association v. U.S. S.E.C.*, 930 F. Supp. 2d 55 (D.D.C., 2013) (Howell, J.) ("a reviewing court must accord first priority in statutory interpretation to the plain meaning of the provision in question."). Where, as here, the statute in question's words "are unambiguous, the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted).

Section 1752's text is clear. It proscribes certain conduct in and around "any restricted building or grounds." *See* 18 U.S.C. § 1752(a). The statute provides three definitions for the term "restricted buildings and grounds," *see* § 1752(c)(1), including "any posted, cordoned off, or

otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting," § 1752(c)(1)(B). Through a cross-reference, Section 1752 makes clear—and the defendant does not appear to dispute this—that "person[s] protected by the Secret Service" include the Vice President and the Vice President-elect. § 1752(c)(2); *see* § 3056(a)(1). The proscribed conduct within a "restricted building or grounds" includes, as relevant here, knowingly and unlawfully entering or remaining, § 1752(a)(1), and knowingly and with intent to impede or disrupt government business, engaging in "disorderly or disruptive conduct" that "in fact, impedes or disrupts" government business," § 1752(a)(2).

That straightforward analysis has a straightforward application to the facts alleged in the defendant's case. Counts Two and Three allege that, on January 6, 2021, a protected person was present inside the Capitol building or on the Capitol grounds, and that some portion of the Capitol building and grounds was posted, cordoned off, or otherwise restricted—making it a "restricted building or grounds" under § 1752(c)(1). Thus, the allegations closely track the statutory language.

Looking outside Section 1752's language, the defendant urges, ECF 34:28, the Court to import an extra-textual requirement that the Secret Service be required to designate the restricted area. That is so, the defendant claims, because Section 1752 is directed to the Secret Service and its "legislative history is saturated with references to the Secret Service and to no other federal agency. Section 1752 is directed not at the Secret Service, however, but at ensuring the protection of the President and the office of the Presidency. *See* S. Rep. 91-1252 (1970); *see also* Elizabeth Craig, *Protecting the President from Protest: Using the Secret Service's Zone of Protection to Prosecute Protesters*, 9 J. Gender Race & Just. 665, 668-69 (2006) . "Indeed, the only reference in the statute to the Secret Service is to its protectees. Section 1752 says nothing about who must

do the restricting." *Griffin*, 2021 WL 2778557, at *7; *see also Mostofsky*, 2021 WL 6049891 at *13 ("The text plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area."). "If Congress intended a statute designed to safeguard the President and other Secret Service protectees to hinge on who outlined the safety perimeter around the principal, surely it would have said so." *Griffin,* 2021 WL 2778557, at *6. "Congress's failure to specify how an area becomes 'restricted' just means that the statute does not require any particular method for restricting a building or grounds." *McHugh*, 2022 WL 296304, at *18. The defendant's reading would have this Court create a "potentially massive procedural loophole" from the statute's "silence." *McHugh,* at 19. The Court should not do so.

Statutory history also undercuts the defendant's argument. *See id.*, at *4–*5 (explaining how Congress has consistently "*broadened* the scope of the statute and the potential for liability"). While the earlier version of Section 1752 also did not say who must restrict a building or grounds, it did incorporate regulations promulgated by the Department of the Treasury (which at the time housed the Secret Service) governing restricted areas. *Id*. The defendant falsely conflates the Treasury's Department's authority to promulgate certain regulations with a requirement that the Secret Service cordon off areas; but, even so, Congress subsequently struck subsection (d) and did not replace it with language limiting the law enforcement agencies allowed to designate a restricted area. Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006). Its decision in 2006 to eliminate reference to the Treasury Department (without replacing it with the Department of Homeland Security, which currently houses the Secret Service) indicates that the statute no longer depends (if it ever did) on whether the Secret Service has defined an area as "restricted."[10]

---

[10] While the defendant claims that legislative history supports his reading of Section 1752, ECF 34:29, *Griffin* rejected an argument that references to the Secret Service in the legislative history suggested that it must do the restricting because Section 1752 is not a "regulatory statute" directed

Moreover, the defendant's reading of the statute, which would require the Secret Service to "cordon off" a private residence, "no matter how secure the location or how imposing the preexisting walls," leads to "pressing absurdities." *Griffin*, 2021 WL 2778557 at *6. Counts Two and Three are sound.

The case on which the defendant relies does not assist his argument. In *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005), the Fourth Circuit affirmed the defendant's conviction under 18 U.S.C. § 1752 for entering an airport hangar that was restricted by Secret Service working in tandem with local law enforcement. Responding to the defendant's claim that he was not advised the hangar was a federally restricted zone designated by Secret Service, the court simply asserted that the lower court's factual findings belie the defendant's claim, and he was aware that Secret Service coordinated security for the President at the hangar. *Bursey*, 416 F.3d at 309. The defendant incorrectly claims that the Fourth Circuit's effort to correct the record from the defendant's misstatement is evidence that only Secret Service may designate a restricted area. ECF 34:19. The court did not address the issue of which law enforcement agencies may designate a restricted area, nor did it hold that only Secret Service is allowed to designate a restricted area.

The defendant contends that the straightforward interpretation described above is unconstitutionally vague. A statute is vague where it (1) fails to give ordinary people fair notice of the conduct it punishes or (2) is so standardless that it invites arbitrary enforcement. *Johnson v. United States,* 576 U.S. 591 (2015). Neither applies to Section 1752.

As described above, Section 1752 prohibits the defendant from knowingly engaging in certain conduct in "any posted, cordoned off, or otherwise restricted area, of…grounds where the

---

to the agency. *Griffin*, 2021 WL 2778557, at *4. In any event, because Section's statutory text is clear, "there is no reason to resort to legislative history." *Id.* (quoting *United States v. Gonzales*, 520 U.S. 1, 6 (1997)).

President or other person protected by the Secret Service is or will be temporarily visiting." §
1752(a), (c)(1)(B). Because the area on the Capitol grounds was cordoned off by metal barricades
and fencing as well as a row of U.S. Capitol Police officers, the defendant knew those grounds
were restricted.  The defendant had further notice, since the fencing he encountered upon arrival
was posted with signs at regular intervals that stated "Area Closed By Order Of U.S. Capitol
Police."[11]

The basis for the defendant's vagueness challenge rests on two complaints; first, that
Section 1752 fails to specify who designates a restricted area, and second, that someone other than
a law enforcement officer could decide to post a sign restricting an area without having authority
to do so.  Nearly identical allegations have been raised and rejected in other January 6 cases.  *See,
e.g.*, *Puma* at *14 (the text of Section 1752" is not complex", quoting *Griffin*, 2021 WL 2778557
at *3).  It "plainly" does not require that the Secret Service must be the entity to restrict or cordon
off an area.  *Mostofsky*,  2021 WL 6049891, at *13; *Puma* at *14 (same).   Because Section 1752
"plainly" does not require any allegation about the Secret Service, the premise for the defendant's
first complaint of vagueness disappears.

The defendant's argument for potential arbitrary enforcement, suggested through a
hypothetical where a private citizen posts a sign restricting space around a protectee, fares no better
and has already been rejected.   This Court explained that the plain text of the statute:

---

[11] After the complaint in this case was filed, law enforcement was able to execute a search warrant
at the defendant's residence.  Agents recovered the body-worn camera the defendant wore on
January 6 throughout the day.  The camera recorded the defendant's arrival on the Capitol grounds,
including his placement of a scooter against the fencing.  The signs described above were visible
on that fencing and the defendant could not have missed them.  While the Court can deny the
defendant's motion even absent the facts described here, they provide one (but not the only)
example of why the defendant's reliance on the complaint is an inappropriate source of facts for
the motion to dismiss.

does not create the opportunity for "anyone claiming to be a part of law enforcement" to manufacture a violation of Section 1752(a) because it would be difficult, if not impossible, to fabricate these other elements of the offense. "[T]here is nothing absurd about criminalizing the breach of any barrier around a Secret Service protectee, and the Court will not create its own atextual absurdity based on a fringe hypothetical that does not even remotely resemble the facts before the Court." *United States v. McHugh*, 2022 WL 296304, at *20.

*Puma*, at *15. The defendant's challenge to Section 1752 fails to withstand scrutiny. Section 1752 is not impermissibly vague.

### IV.  The Defendant's Premature Challenge To The Sufficiency Of The Evidence For Counts Three, Four and Five Must Be Denied

The defendant claims Counts Three, Four, and Five are invalid "as a matter of law," but cites no law to support this claim. Instead, the defendant argues the sufficiency of the evidence for each count, relying on a statement of facts, ECF 2-1, for a criminal complaint that was never intended to represent the scope of the government's evidence. The defendant's argument has all the hallmarks of a premature sufficiency challenge, including characterizations of the government's evidence, references to what the government alleges outside of the indictment, and speculation about what the United States will be able to prove. As explained above, the defendant's objections are not cognizable at this stage of the case. *See Safavian*, 429 F. Supp. 2d at 159.

The defendant claims, remarkably, that the United States has not "alleged" any "fact" to "support a finding" that the defendant acted with the necessary intent. In Count Three, the United States alleged that the defendant acted both "knowingly" and "with the intent to impede and disrupt the conduct of government business and official functions." ECF 9:2. In Counts Four and Five, the government alleged that the defendant acted "willfully and knowingly." ECF 9:2-3. The defendant offers no legal authority to support any claim that the prosecution must allege something more with respect to intent in any of these counts, or that any factual "finding" is required at this

stage of the case.

Concerning Counts Three-Five, the defendant argues again that his intent was to Livestream on January 6, but even if true, that motive is not inconsistent with the intent alleged in any of these counts. This claim is a matter for trial.

For these final counts of the indictment, the defendant disputes facts but fails to identify any legal deficiency in the charges these counts allege. For that reason, his objections to Counts Three-Five should be summarily denied.

**CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052


By:     *s/Karen Rochlin*
Karen Rochlin
Assistant United States Attorney Detailee
DC Bar No. 394447
99 N.E. 4th Street
Miami, Florida 33132
(786) 972-9045
Karen.Rochlin@usdoj.gov


*/s/ James I. Pearce*
James I. Pearce
Appellate Counsel to the Capitol Siege Section
United States Attorney's Office
NC Bar No. 44691
601 D. Street, N.W.
Washington, DC 20530
James.Pearce@usdoj.gov
(202) 532-4991