UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 21-0512 (PLF) |
| | ) |
| MATTHEW THOMAS PURSE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

        Defendant Matthew Thomas Purse is charged in a five-count indictment based on conduct related to the events at the United States Capitol on January 6, 2021. See Indictment [Dkt. No. 9]. Pending before the Court is Mr. Purse's motion to modify the conditions of his pretrial release to permit him to relocate from Irvine, California, to Boise, Idaho. See Matthew Purse's Motion to Modify Order Setting Conditions of Release ("Mot.") [Dkt. No. 37] at 1. The government filed a response on August 15, 2022, see United States' Response to Defendant Purse's Motion to Modify Order Setting Conditions of Release ("Opp.") [Dkt. No. 38], and Mr. Purse filed a reply on September 9, 2022. See Matthew Purse's Reply in Support of Motion to Modify Order Setting Conditions of Release ("Reply") [Dkt. No. 40]. The Court has carefully considered the parties' filings and the appliable authorities. For the following reasons, the Court denies Mr. Purse's motion.

I. BACKGROUND

        The Statement of Facts accompanying the criminal complaint in this case asserts that video footage depicts Mr. Purse entering the United States Capitol on January 6, 2021, wearing a tactical vest and helmet labeled with the word "PRESS" and holding a recording

device at the end of a pole.  See Statement of Facts [Dkt. No. 2-1] at 2-3.  The government

alleges that while on the Capitol grounds, Mr. Purse "taunted and threatened police officers" and

"harassed, interfered with, and threatened members of the press."  Opp. at 6.  According to the

government, after the FBI issued a public "Be on the Lookout" notice for Mr. Purse, he

"streamed remarks taunting the FBI."  Id. at 7-8.  On July 9, 2021, Mr. Purse was arrested in

California.  See Executed Arrest Warrant [Dkt. No. 6].  On August 6, 2021, the grand jury

returned a five-count indictment charging Mr. Purse with one felony – Obstruction of an Official

Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 – and four

misdemeanors – Entering and Remaining in a Restricted Building or Grounds, in violation of 18

U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in

violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40

U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in

violation of 40 U.S.C. § 5104(e)(2)(G).  See Indictment [Dkt. No. 9].

Mr. Purse currently lives in Irvine, California.  Mot. at 1.  As part of his

conditions of release, Mr. Purse is required to submit to supervision by the Pretrial Services

Agency ("PSA") of the Central District of California.  See Order Setting Conditions of Release

[Dkt. No. 8] at 2.  Mr. Purse wishes to relocate to Boise, Idaho, where he plans to "start[] a new

food manufacturing technology company . . . based in Garden City, a suburb of Boise," and

submit to supervision by the District of Idaho.  Mot. at 1.  Mr. Purse asserts that he is not able to

sign a housing rental agreement in Boise, Idaho due to this pending case and therefore intends to

reside at an extended-stay hotel.  See Declaration of Hilary Potashner ("Decl.") [Dkt.

No. 37-1] ¶¶ 2, 4.  Mr. Purse states that on July 22, 2022, District of Columbia Pretrial Services

Officer John Copes informed Mr. Purse that he did not object to Mr. Purse's requested

relocation. See Mot. at 1; Decl. ¶¶ 9-10.  After the government filed its response, however, Officer Copes submitted a Pretrial Compliance Report stating that the District of Columbia PSA "defers to the [C]ourt" regarding Mr. Purse's motion due to "additional information received from the US Attorney's office."  August 17, 2022 Pretrial Compliance Report [Dkt. No. 39] at 2.

## II.  LEGAL FRAMEWORK

The Bail Reform Act of 1984 requires that "a defendant on pretrial release be 'subject to the least restrictive' set of conditions that will reasonably assure his appearance and the safety of the community." United States v. Brock, Crim. No. 21-0141, 2021 WL 3616892, at *2 (D.D.C. Aug. 16, 2021) (quoting 18 U.S.C. § 3142(c)(1)(B)).  The conditions imposed on a defendant on pretrial release must therefore be appropriate to the defendant's flight risk and dangerousness.  See United States v. Irizarry, No. 22-3028, 2022 WL 2284298, at *1 (D.C. Cir. June 24, 2022) (per curiam).  When determining whether conditions of release imposed on a defendant will "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," courts must take into account:

> (1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); see United States v. Vasquez-Benitez, 919 F.3d 546, 550-51 (D.C. Cir. 2019); United States v. Eisenhart, Crim. No. 21-118, 2021 WL 4148484, at *2 (D.D.C. Sept. 13, 2021) (applying the Section 3142(g) factors in considering a defendant's motion to modify the conditions of her release).  A determination that a defendant is a flight risk "must be

supported by a preponderance of the evidence." <u>United States v. Vasquez-Benitez</u>, 919 F.3d

at 551. The Court may "at any time amend [a defendant's pretrial release] order to impose

additional or different conditions of release." 18 U.S.C. § 3142(c)(3).

## III. DISCUSSION

The question before the Court is whether modifying the conditions of Mr. Purse's

pretrial release to permit him to relocate from Irvine, California, to Boise, Idaho presents either a

risk of flight or a danger to others. The Court need not address Mr. Purse's dangerousness

because Mr. Purse's risk of flight presents a separate, compelling ground for denying his motion

and because the parties' filings focus primarily on his risk of flight. <u>See</u>, <u>e.g.</u>, <u>United States v.</u>

<u>Viau</u>, Crim. No. 19-09, 2019 WL 3412920, at *3 (D.D.C. July 29, 2019) (noting that "the final

Section 3142(g) factor – the nature and seriousness of the danger to any person or the community

– has minimal relevance" because "[t]he government is seeking, and the [c]ourt is ordering,

conditions of release based solely on risk of flight, not danger to the community"). The first two

Section 3142(g) factors – the "nature and circumstances of the offense charged" and "the weight

of the evidence" against Mr. Purse – are not affected by the requested relocation and have little

bearing on his flight risk. 18 U.S.C. § 3142(g). The Court therefore addresses in turn the

parties' arguments on flight risk in light of the third Section 3142(g) factor, Mr. Purse's "history

and characteristics." <u>Id</u>.

Two issues relating to Mr. Purse's "history and characteristics" raised in the

parties' briefs are relevant to the assessment of his risk of flight. 18 U.S.C. § 3142(g). First, the

government objects to Mr. Purse's requested relocation, arguing that Mr. Purse has a history of

concealing his location from law enforcement and that an extended-stay hotel in Boise, Idaho is

not a "stable residence." <u>See</u> Opp. at 1, 12. The government argues that "for years, the

defendant's physical residence has remained unknown, unreported, and undocumented" and that prior to his arrest in this case, Mr. Purse "engaged in significant efforts to conceal his location" through the use of P.O. boxes and "false claims of residence at an extended stay hotel." Id. at 1, 10.  The government also points out that Mr. Purse is "a felon with two prior fraud convictions," one of which "arose from conduct that included his periodic changing of Web sites, bank accounts, and business addresses to avoid detection by law enforcement." Id. at 1, 7 n.5.

Mr. Purse responds that his use of P.O. boxes does not suggest "an attempt to evade law enforcement because he . . . has had his current P.O. box since 2017, well before the alleged conduct in this case." Reply at 3.  Mr. Purse further argues that he has been living in a "warehouse that he does not own" in California and that when he "disclosed his living arrangements to Pretrial Services in the Central District of California from the outset of their courtesy supervision . . . Pretrial Services did not require him to relocate to a 'more stable' residence." Id.  In addition, Mr. Purse notes that he has never missed a court appearance in this case or "in either of the two prior criminal cases brought against him in Arizona." Id. at 4.

Second, the government objects to Mr. Purse's requested relocation on the ground that his motion "does not state that he in fact has a job in or full-time employment in Idaho" and does not "assert that [Mr. Purse] has ties to Idaho other than 'work purposes' for an unnamed entity." Opp. at 12.  In his reply, Mr. Purse states only that "while [his] work-related reasons for wanting to move to Boise are very important to him, they are irrelevant to the strength of his [m]otion—the only pertinent question is whether requiring [him] to reside in the Central District of California is necessary to assure his future appearances in court." Reply at 2.

The Court shares the government's concern regarding both Mr. Purse's history of concealing his location from law enforcement and the lack of detail about Mr. Purse's intended

work in Idaho.  The Court agrees with the government that an extended-stay hotel is not a stable

residence.  And given Mr. Purse's history of concealing his location from law enforcement, his

proposed stay at an extended-stay hotel is troubling, even taking into account his consistent

"record concerning appearance at court proceedings."  18 U.S.C. § 3142(g).  Even more

troubling is the lack of information on the work that Mr. Purse plans to do in Idaho, other than

his representation that he is "starting a new food manufacturing technology company."

Decl. ¶ 2.  Mr. Purse's reply brief failed to provide detailed information even after the Court

ordered that Mr. Purse's "reply should provide more fulsome details of [his] requested

relocation."  See August 30, 2022 Minute Order.

      In sum, after considering the parties' arguments regarding Mr. Purse's "history

and characteristics," 18 U.S.C. § 3142(g), the Court concludes that the government has

demonstrated by a "preponderance of the evidence" that Mr. Purse poses a flight risk if he is

permitted to relocate to Boise, Idaho.  United States v. Vasquez-Benitez, 919 F.3d at 551.

Mr. Purse's continued supervision by the Central District of California remains part of the least

restrictive set of conditions that will reasonably assure his future court appearances.  See United

States v. Brock, 2021 WL 3616892, at *2 (quoting 18 U.S.C. § 3142(c)(1)(B)).

      For these reasons, Mr. Purse's Motion to Modify Order Setting Conditions of

Release [Dkt. No. 37] is DENIED without prejudice.

      SO ORDERED.


                                             PAUL L. FRIEDMAN
                                             United States District Judge

DATE: 11/29/22