UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>  v.<br><br>MATTHEW PURSE,<br><br>           Defendant. | CASE NO. 1:21-CR-00512-PLF<br><br>**Honorable Paul L. Friedman**<br>**United States District Judge**<br><br>**(Oral Argument Requested)** |

# MATTHEW PURSE'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT

Stephen G. Larson (Bar 1046780)
Hilary Potashner (Admitted *pro hac vice)*
LARSON LLP
555 S. Flower Street
Suite 4400
Los Angeles, CA 90071
Tel:  (213) 436-4888
Fax: (213) 623-2000
Email: slarson@larsonllp.com
Email:  hpotashner@larsonllp.com

I.      **INTRODUCTION**

As explained in Mr. Purse's Motion to Dismiss the Indictment [ECF No. 34], the government's dangerously broad interpretation of Section 1512(c)(2) cannot be countenanced. According to the government, the *actus reus* prohibited by subsection (c)(2) is not limited in any way by the examples provided in subsection (c)(1) and thus any act of "obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so" falls within the ambit of the statute.  *See* ECF no. 35 at p. 21.  Although the government focuses on the word "obstruct," the statute does not merely prohibit obstructing an official proceeding, it also prohibits attempting to influence one.  Thus, under the government's interpretation, Section 1512(c)(2) applies to any act of *attempting* to influence legislation or a federal court hearing. Taken to its logical conclusion, the government is contending that every single federal litigant and attorney representing them, filer of an amicus brief, activist, peaceful protestor, and lobbyist automatically satisfies the *actus reus* requirement of Section 1512(c)(2) because they are attempting to influence an official proceeding.  Making matters worse, the government's interpretation of the *mens rea* requirement that a defendant act "corruptly" does not significantly limit the statute's reach.  According to the government, a person satisfies this element if they act "with consciousness of wrongdoing."  *See* ECF no. 35 at p. 31.  Thus, the government contends that any person who, with consciousness of wrongdoing, attempts to influence an official proceeding, is guilty of a felony punishable by up to 20 years in prison under Section 1512(c)(2).

In *United States v. Miller*, 2022 WL 823070, at *15 (D.D.C. Mar. 7, 2022) and *United States v. Fischer*, 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022), two cases involving defendants who participated in the January 6th protest, the Courts recognized that Congress could not have intended for subsection (c)(2) to have such an extraordinary reach and concluded that the *actus reus* must be construed as only prohibiting a person from tampering with evidence.

1

The government appealed these rulings and in *United States v. Fischer*, 64 F. 4th 329 (D.C. Cir. 2023), the D.C. Circuit panel comprised of Judges Pan, Walker, and Katsas reversed in a fractured opinion. Although Judge Pan's decision was the "lead opinion," it cannot be construed as binding precedent here because there was a three-way split over the scope of Section 1512(c)(2)'s *actus reus* and *mens rea* requirements.[1] Critically, however, all three of the Judges found that the government's interpretation of Section 1512(c)(2) was overly broad, but each differed on the means of narrowing the statute. Indeed, the only reason the panel reversed the District Court's decision is because Judges Pan and Walker both concluded that *assaulting* a police officer is conduct that is sufficient to violate Section 1512(c)(2). Here there are no allegations that Mr. Purse assaulted anyone—let alone a police officer—the government only alleges that Mr. Purse entered the Capitol building thirty-nine minutes after Congress had adjourned, that he spent a total of thirteen minutes in the building, and that while inside, he did nothing other than stand off to the side videotaping the protestors. Accordingly, for the reasons set forth below, *Fischer* supports Mr. Purse's Motion to Dismiss the Indictment.

**II.     SUMMARY OF *FISCHER***

    **A.     Judge Pan's Decision**

Judge Pan conceded that Section 1512(c)(2) had not been applied to conduct unrelated to evidence tampering prior to the January 6th cases. *Fischer*, 64 F. 4th at 339. Nevertheless, she found that the meaning of Section "1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Fischer*, 64 F. 4th at 336. Judge Pan's conclusion that the text was unambiguous also led her to find that other cannons of statutory construction supported her interpretation. *See e.g. id.* at 347 ("[A]ny

---

[1] On April 25, 2023 the defendants filed a Petition for Panel Rehearing to obtain clarity on the opinion and the government's response is due on May 11th. *See United States v. Fischer,* No. 22-3038, Document Nos. 1996380 and 1996482.

discrepancy between Congress's primary purpose in amending the law and the broad language that Congress chose to include in § 1512(c)(2) must be resolved in favor of the plain meaning of the text"); *id* at 348 (finding that the "'elephants in mouseholes' principle does not apply" because "Section 1512(c)(2) is not vague."). Similarly, Judge Pan found that because "the language of § 1512(c)(2) is clear and unambiguous," the rules of restraint and lenity did not apply. *Id.* at 350.

However, Judge Pan did find that "[a]lthough the text of § 1512(c)(2) plainly extends to a wide range of conduct," the requirement of corrupt intent provided a "significant guardrail[] for prosecutions brought under the statute." *Id.* at 339. Judge Pan noted that there were several possible interpretations of the word "corruptly: (1) "'wrongful, immoral, depraved, or evil' conduct," (2) "'with a corrupt purpose,' through 'independently corrupt means,' or both," and (3) acting "voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person." *Id.* at 340. According to Judge Pan, under each of these definitions, corrupt intent exists when the act is "is independently unlawful" and that because the defendants were "charged with assaulting law enforcement officers while participating in the Capitol riot" their "behavior clearly meets the test of independently unlawful conduct." *Id.* Thus, because Judge Pan found that assaulting a police officer in an attempt to overturn the presidential election fell within any coneceivable interpretation of "corruptly," she declined to outline "the exact contours of 'corrupt' intent." *Id*.

Similarly, Judge Pan found that "corruptly" was not unconstitutionally vague as applied to the defendants because "it is beyond debate that appellees and other members of the public had fair notice that assaulting law enforcement officers in an effort to prevent Congress from certifying election results was 'wrongful' and 'corrupt' under the law." *Id.* at 342.

3

Accordingly, Judge Pan's conclusion that the defendants acted "corruptly" was based entirely on the fact that the defendants were alleged to have assaulted police officers. Indeed, Judge Pan implicitly rejected the government's contention that "consciousness of wrongdoing" alone was sufficient to establish that a person was acting corruptly. *See id.* at 339 ("[T]he requirement of 'corrupt' intent prevents subsection (c)(2) from sweeping up a great deal of conduct that has nothing to do with obstruction — for instance, lobbyists who know they advocate for morally wrongful causes.").

B.     **Judge Walker's Concurrence**

Judge Walker concurred in the judgment on very narrow grounds. According to Judge Walker, the court needed to "define that mental state to make sense of (c)(2)'s act element" because "[i]f (c)(2) has a broad act element and an even broader mental state, then its 'breathtaking' scope is a poor fit for its place as a residual clause in a broader obstruction-of-justice statute." *Id.* at 351–52. According to Judge Walker,

> "Corruptly" in § 1512(c) means to act "with an intent to procure an unlawful benefit either for [oneself] or for some other person." *Marinello v. United States*, 138 S. Ct. 1101, 1114, (2018) (Thomas, J., dissenting) (cleaned up). It "requires proof that the defendant not only knew he was obtaining an 'unlawful benefit' but that his 'objective' or 'purpose' was to obtain that unlawful benefit." *Id.* And that benefit may be unlawful either because the benefit itself is not allowed by law, or because it was obtained by unlawful means. *Fischer*, 64 F. 4th at 357.

Judge Walker emphasized that his interpretation was necessary because "[a]n innovatively broad definition of 'corruptly' could raise serious concerns that § 1512(c)(2) is a vague provision with a breathtaking scope" and that the Supreme Court had cautioned that "'[c]ourts should not assign federal criminal statutes a 'breathtaking' scope when a narrower reading is reasonable.'" *Id.* at 360-361 (citing *United States v. Dubin*, 27 F.4th 1021, 1041 (5th Cir. 2022) (Costa, J., dissenting) (quoting *Van Buren v. United States*, 141 S. Ct. 1648, 1661

4

(2021)). To that end, Judge Walker explicitly rejected the government's definition of corruptly and found that the statute must be read "to require more than a 'wrongful purpose' because otherwise "(c)(2) might criminalize many lawful attempts to "influence[ ]" congressional proceedings — protests or lobbying, for example." *Id.* at 360-61.

Ultimately, Judge Walker found that the Indictment was sufficient because under his interpretation of corruptly, "it might be enough for the Government to prove that a defendant used illegal means (like assaulting police officers) with the intent to procure a benefit (the presidency) for another person (Donald Trump). *Id.* at 361. Thus, as with Judge Pan, the fact that the defendants were alleged to have assaulted police officers was essential to his concurring in reversing the dismissals.

Notably, however, Judge Walker repeatedly emphasized that he only concurred with Judge Pan's interpretation of Section 1512((c)(2)'s *actus reus* element because he believed that his definition of corruptly sufficiently addressed the overbreadth and vagueness problems caused by that interpretation. *See id.* at 362 n. 10. ("[M]y reading of 'corruptly' is necessary to my vote to join the lead opinion's proposed holding on 'obstructs, influences, or impedes' an 'official proceeding.' . . . *If I did not read 'corruptly' narrowly, I would join the dissenting opinion*.") (emphasis added); *Id.* at 352 n. 1 ("Though the district court did not reach the meaning of 'corruptly,' we have no choice. As I will explain . . . my *vote to uphold the indictments depends on it*.") (emphasis added); *Id.* at 362 ("Because I read 'corruptly' as courts have read it for hundreds of years—*and only because I read it that way*—I concur in the Court's judgment.") (emphasis added). Accordingly, absent Judge Walker's narrow interpretation of the word "corruptly," he would have agreed with Judge Katsas that the *actus reus* requirement does not extend beyond evidence tampering.

5

## C. Judge Katsas's Dissent

Judge Katsas's dissenting opinion largely agreed with the analysis of the District Court[2] that the government's position "dubiously reads *otherwise* to mean 'in a manner different from,'" subsection (c)(2) "rather than 'in a manner similar to.'" *Id.* at 363. As with Judge Walker, Judge Katsas was concerned that "the government's reading makes section 1512(c) implausibly broad and unconstitutional in a significant number of its applications." *Id.* However, unlike Judge Walker, Judge Katsas's approach was to limit the *actus reus* requirement to only apply to evidence tampering. *Id.*

According to Judge Katsas, Judge Pan's and Judge Walker's attempts to limit the breadth of the statute with the *mens rea* requirement was insufficient. Specifically, Judge Katsas concluded that all the suggested interpretations of "corruptly" were problematic:

- Defining "corruptly" as "'wrongful, immoral, depraved, or evil' conduct," was insufficiently vague. *See id.* at 382 ("Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific—indeed they may be less specific—than 'corrupt.'" (citing *United States v. Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991)).

- Defining corruptly as " with a corrupt purpose,' through 'independently corrupt means,' or both" still does not clarify what is meant by "corrupt." *Id.* at 380.

- Defining corruptly as including an unlawful means test "would cover large swaths of advocacy, lobbying, and protest" such as "a protestor who demonstrates outside a courthouse," "an EPA employee who convinces a member of Congress to change his vote on pending environmental legislation," and a "peaceful protestor in the Senate gallery." Although these crimes only carry "maximum penalties of one year, a criminal fine, and six months, respectively," this definition of corruptly "would supercharge a range of minor advocacy, lobbying, and protest offenses into 20-year felonies." *Id.*

- Defining corruptly as including an unlawful benefits test would not sufficiently narrow the *actus reus* because "anyone acting to achieve a specific purpose would satisfy this requirement, for the purpose of the action would qualify as the benefit." *Id.* at 381.

---

[2] Mr. Purse already fully briefed the District Court's opinion so he will not reiterate those arguments in this supplemental brief. *See* ECF No. 34 at IV.A.1.b. at pp. 10-16; ECF No. 36 at III.A.1.b. at pp. 7-14).

6

- The concurrence's definition of "corruptly" still had "improbable breadth" because "it would continue to supercharge comparatively minor advocacy, lobbying, and protest offenses into 20-year felonies, provided the defendant knows he is acting unlawfully in some small way." *Id.*

In sum, Judge Katsas found that "there is no plausible account of how section 1512(c)(2) could sweep in these defendants yet provide 'significant guardrails' through its requirement of acting 'corruptly,'" and thus "[r]ather than try to extract meaningful limits out of that broad and vague adverb, we should have acknowledged that Congress limited the *actus reus* to conduct that impairs the integrity or availability of evidence." *Id.* at 382. Moreover, he found that "if there were any remaining doubt, the rule of lenity would resolve this case for the defendants." *Id.*

### III.    ARGUMENT

As can be seen from the above summaries, there were only two points that a majority of the judges agreed upon in *Fischer*—(1) the government's interpretation of Section 1512(c)(2) was overly broad, and (2) assaulting a police officer was sufficient to establish a "corrupt" act under Section 1512(c)(2). Beyond that, there was no agreement over the scope of Section 1512(c)(2):

- Judge Pan found that the *actus reus* did not require an action with respect to evidence tampering but declined to determine the outer bounds of the scope of the *mens rea* requirement.

- Judge Walker agreed that the *actus reus* extended beyond actions with respect to evidence tampering, but only if his narrow definition of "corruptly" was accepted.

- Judge Katsas found that the *actus reus* only reached actions with respect to evidence tampering, and thus declined to reach the *mens rea* requirement because the defendants did not take any such evidence-related actions.

Because there was no consensus over the scope of Section 1512(c)(2), this Court is not bound to follow any of the three opinions here. However, this Court should follow Judge Katsas's interpretation because it causes the least constitutional problems. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575, (1988)

7

("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

If Section 1512(c)(2) extends beyond actions related to evidence tampering, then the statute would have significant First Amendment issues with respect to its prohibition of attempting to influence official proceedings. In *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, the Supreme Court declined to read the Sharman Antitrust Act in such a manner and held that the act "does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." 365 U.S. 127, 136 (1961). In reaching that decision, the Court explained that "in a representative democracy such as this… the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives." *Id.* at 137. Thus, because "the right of petition is one of the freedoms protected by the Bill of Rights[,]" the Court refused to "lightly impute to Congress an intent to invade these freedoms." *Id.* The Court further found that "the right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws *cannot properly be made to depend upon their intent in doing so*" and thus held that "insofar as the [defendant's] campaign was directed toward obtaining governmental action, its legality was not at all affected by any anticompetitive purpose it may have had." *Id.* at 139 (emphasis added). Moreover, the Court found that petitioning did not lose its protection merely because it was unethical. *See id.* at 140 ("Congress has traditionally exercised extreme caution in legislating with respect to problems relating to the conduct of political activities, a caution which has been reflected in the decisions of this Court interpreting such legislation. All of this caution would go for naught if we permitted an extension of the Sherman Act to regulate activities of that nature

8

simply because those activities have a commercial impact *and involve conduct that can be termed unethical political activity*.") (emphasis added).

Accordingly, as with the Sherman Act, this Court should be reluctant to construe Section 1512(c)(2) in a way which criminalizes individuals who petition Congress merely because they are seeking a benefit, or because their motivation may be deemed "wrongful." Moreover, requiring the benefit sought to be "unlawful" does not alleviate the concern because a large portion of petitioning involves seeking an unlawful benefit—for example, activists seeking to legalize marijuana would be petitioning Congress for a benefit that is currently unlawful.

Further, while requiring an independent unlawful act may alleviate some of these First Amendment issues, as Judge Katsas noted, it would do so by "supercharging" minor advocacy, lobbying, and protest offenses into 20-year felonies. *Fischer*, 64 F. 4th at 380. For instance it is a misdemeanor for "[a]n individual or group of individuals may not willfully and knowingly… parade, demonstrate, or picket in any of the Capitol Building." 40 U.S.C. § 5104(e)(2)(G). This offense will almost always involve an attempt to influence Congress and there is nothing to suggest that in enacting Section 1512(c)(2), Congress intended to transform such a misdemeanor offense into 20-year felony.

Finally, as Judge Katsas explained, relying on "corruptly" to limit the scope of Section 1512(c)(2) would render the statute unconstitutionally vague. The government provided its definition of corruptly, Judge Pan set forth three additional possible definitions, and Judge Walker proposed his own definition. Critically, despite the complete lack of agreement on what is meant by "corruptly," none of the proposed definitions clearly apply to the allegations against Mr. Purse. Unlike a person who assaulted a police officer, a reasonable person would not understand that Mr. Purse's actions in the Capitol Building satisfied any of the proposed definitions of "corruptly" and thus the statute is unconstitutionally vague as applied.

In sum, limiting Section 1512(c)(2) through the *mens rea* element raises numerous constitutional issues and thus this Court should adopt Judge Katsas's opinion and find that the *actus reus* is limited to acts associated with evidence tampering.  However, even accepting Judge Pan or Judge Walker's opinions, Mr. Purse cannot be deemed to have acted corruptly.  Mr. Purse is not alleged to have engaged in an "independently unlawful" act, nor is he alleged to have known he was seeking an unlawful benefit, let alone that his objective was to obtain one.  To the contrary, the government alleges that Mr. Purse entered the Capitol building thirty-nine minutes after Congress had adjourned, that he spent a total of thirteen minutes in the building, and that while inside, he did nothing other than stand off to the side videotaping the protestors.  Accordingly, even under Judge Pan and Judge Walker's opinions, Mr. Purse's conduct cannot be considered "corrupt" under Section 1512(c)(2), or at the very least, the rule of lenity applies to his conduct.

## IV.    CONCLUSION

For the foregoing reasons, *Fischer* confirms that the Section 1512(c)(2) charge against Mr. Purse fails as a matter of law and must be dismissed.


Dated:  May 1, 2023

Respectfully submitted,

LARSON LLP

By:      */s/ Stephen G. Larson*
Stephen G. Larson (Bar 1046780)
Hilary Potashner (Admitted *pro hac vice*)
LARSON LLP
555 S. Flower Street
Suite 4400
Los Angeles, CA  90071
Tel:  (213) 436-4888
Attorneys for Defendant Matthew Purse